IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CECILIA A. TROMP<br><br>**Plaintiff,**<br><br>v.<br><br>AEROSTAR AIRPORT HOLDINGS, LLC; PRIME JANITORIAL SERVICE, CORP.; MAPFRE PRAICO INSURANCE CO.; JOHN and JANE DOE; INSURANCE COMPANIES A,B,C; CORPORATIONS X,Y,Z<br><br>**Defendants** | Civil No. 22cv1459<br><br>Personal Injury; Diversity; Jury Trial Demanded |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, Cecilia A. Tromp, by and through its undersigned counsel, respectfully states, alleges and prays as follow:

**I. JURISDICTION AND VENUE**

**1.** This Court has subject matter jurisdiction of this action pursuant to *28 U.S.C § 1332* as the amount in controversy exceeds $75,000 and plaintiff and the defendants are citizens of different states.

**2.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## II. THE PARTIES

**3.** At all relevant times herein, Plaintiff, Cecilia A. Tromp, was and still is a citizen of Hamilton, New Jersey.

**4.** At all relevant times herein Defendant, Aerostar Holdings LLC ("Aerostar"), was and still is a limited liability company created and organized under the laws of Commonwealth of Puerto Rico, with main offices located at Luis Muñoz Marín International Airport ("LMM"), Terminal D, Carolina, Puerto Rico. At all relevant time herein, Aerostar was and still is the operator of the LMM.

**5.** At all relevant times herein, Prime Janitorial Service, Corp. ("PJS") was and still is a corporation created and organized under the laws of the Commonwealth of Puerto Rico, with main offices located at Urb. Constancia 2673 Las Americas Ave., PR 00715, and was contracted by Aerostar to provide janitorial and maintenance services at the LMM, including the area where Plaintiff suffered the accident described herein.

**6.** Mapfre Praico Insurance Co. ("Mapfre") was and still is and insurance company doing business under the laws of the Commonwealth of Puerto Rico, who had issued and maintained in full force and effect, at the time of the injuries and damages alleged herein, polices of insurance issued to Aerostar and PJS, covering all risk for injuries and accidents that Plaintiff

suffered as a result of their negligence in operating, cleaning and maintaining the LLM as described herein.

7. Fictitiously named Defendants, John and Jane Doe, ABC Insurance Companies and XYZ Corporations, upon information and belief, are liable for the acts complained of herein, but whose acts and true identities are unknown to the Plaintiff. Plaintiff will request leave of the Court to amend her Complaint to insert the true names of the fictitiously named Defendants when said names are known to the Plaintiff, and to allege specifically their claims against said Defendants.

### III. FACTUAL ALLEGATIONS

8. At all times mentioned, the Aerostar was in possession and control of the LMM and conducted its business in the premises.

9. At all times mentioned, Aerostar was operating the LMM and extended an invitation to the public to come into the airport for the purpose of doing business with it.

10. Aerostar, at all times mentioned, had control of various or all portions of the LMM premises, including the appurtenances, floors and terminals in the airport and premises.

11. At all times mentioned, PJS was contracted by Aerostar to provide janitorial and maintenance services at the LMM, including the area where Plaintiff suffered the accident described herein.

**12.** Aerostar and PJS at all times mentioned, and at earlier times, maintained the floors in the premises, and more particularly the floor in front of the "El Market" store within one of the LMM terminals, which floor is constructed of "terrazzo" or tile or other substance having a smooth and slippery surface, and which floor when wet was dangerous to the life and limb of persons having occasion to walk on the floor.

**13.** Aerostar and PJS knew of the dangerous condition of the floor when wet and knew that the substance of which the floor was constructed was inherently dangerous when wet.

**14.** On Friday May 20, 2022 at approximately 12:30pm, Plaintiff was in the LMM, leaving the El Market store and headed to a United Airlines gate for return flight back to New Jersey.

**15.** As Plaintiff left the store, she walked through seated area near gates and, suddenly and without warning, slipped and fell on water puddle she did not see.

**16.** There were no warnings alerting patrons or Plaintiff that the floor where Plaintiff fell was wet and dangerous.

**17.** Paramedics took her to the University of Puerto Rico Hospital in Carolina where doctors found that she had a depressed fracture through the lateral tibia plateau with extension into the tibiofibular joint in her left knee and an impacted fracture of the distal radius with volar apex

angulation on her left wrist with articular extension of the facture and ulnar styloid displaced fractured.

**18.** The attending ER doctor bandaged/splint both her left leg and wrist.

**19.** Because of the accident and consequent visit to the hospital, Plaintiff missed her flight.

**20.** Plaintiff's friend, Scott Adams, booked a hotel where for over 24 hours Plaintiff sat in extreme pain waiting for her flight home.

**21.** Due to additional flight delays, Plaintiff did not arrive in Newark, New Jersey, until 1am, May 22, 2022.

**22.** Immediately upon her return to New Jersey, Plaintiff went to Princeton Medical (Penn Medicine), Plainsboro, NJ, where she was admitted immediately at approximately 3am.

**23.** Doctors at Penn Medicine confirmed Plaintiff had suffered a distal radial facture with ulnar styloid fracture on her left wrist and tibial plateau fracture on her left knee.

**24.** On Monday, May 23, 2022, at 9am, Plaintiff underwent two surgeries consisting of open reduction and internal fixation of left lateral tibial plateau fracture and open reduction and internal fixation of left distal radius fracture. Doctors placed a plate and screws on both her left knee and wrist.

**25.** Plaintiff remained hospitalized until Thursday until May 26, 2022. While hospitalized, Plaintiff worked with Physical

and Occupational therapy and doctors determined she would require rehab post discharge.

**26.** On May 26, 2022, Plaintiff was admitted for intensive physical therapy to St. Lawrence Rehab Facility in, Lawrenceville, NJ, where she remained until June 15, 2022.

**27.** On July 10, 2022, Plaintiff went to the Penn Medicine ER and was admitted due to a severe infection in her knee incision area. On Jully 11, 2022, Plaintiff had underwent a left proximal tibial incision irrigation and debridement, knee arthrotomy, and application of negative pressure incisional vacuum to clean out the staph infection in which an abscess formed.

**28.** She was hospitalized for five (5) days, released on Saturday, July 16, 2022.

**29.** After her discharge from her third surgery, Plaintiff was sent home and had to undergo additional peripherally inserted central catheter administered antibiotics she has self-administered since.

**30.** As a result of the prolonged use of antibiotics, Plaintiff has developed an ulcerative colitis flare which cause symptoms such as diarrhea, abdominal pain and cramping, rectal pain and bleeding, fatigue, and urgent bowel movements.

**31.** Plaintiff will be required to undergo additional an surgery on her knee to have the hardware and pins/screws removed to avoid future infections.

**32.** Plaintiff is currently on disability from her job and cannot work until she recovers. At present, she is walking with a cane and continues physical therapy until her left knee heals so she can undergo the remaining surgery to remove the hardware.

**33.** As a direct result of the injury to her knee and surgeries, plaintiff will suffer from arthritis for the rest of her life.

**34.** As a direct and proximate result of the negligence of Aerostar and PJS, Plaintiff was incapacitated and sustained severe and permanent injuries and scars to her left leg and wrist.

**35.** These occurrences and injuries occurred solely as a direct and proximate result of Aerostar's and PJS' negligence, as a proximate result of the initial acts, negligence, lack of attention, and intentional and/or reckless acts on the part of Aerostar and PJS, without any negligence on the part of the Plaintiff contributing thereto.

**36.** Aerostar and PJS, at the time of the accident mentioned, negligently and carelessly permitted the floor in the premises, and more particularly the floor in front of the El Market store at the United Airlines terminal, to become and remain in a dirty, wet, slippery, negligent, defective, and dangerous condition.

**37.** Aerostar rand PJS failed to place wet floor warning sings, matting, absorbent pads, or other material on the floor to prevent slip-and-falls, despite having actual and constructive notice of the dangerous condition of the floor.

**38.** Aerostar and PJS knew or had reason to know of the above described wet floor and dangerous conditions in the premises.

**39.** The negligence of Aerostar and PJS, in addition to that hereinabove alleged, consisted of:

   a. Failure to warn of the dangerous condition on the premises;
   b. Failure to eliminate the source of water creating the dangerous conditions on the premises;
   c. Failure to clean and dry the wet floor at the premises;
   d. Failure to place mats, dray pads, or other materials that would prevent people from slipping and falling on the wet floor of the premises;
   e. Among other negligent acts, omissions, and breaches of duties which will be proved at trial.

**40.** As a direct and proximate result of Aerostar and PJS' negligence, Plaintiff has experienced physical impairment, disfigurement, mental anguish, and pain and suffering in the past. Plaintiff will continue to experience physical impairment,

disfigurement, mental anguish, and pain and suffering in the future.

**41.** As a direct and proximate result of Aerostar and PJS' negligence, Plaintiff has incurred medical expenses in the past and, in reasonable medical probability, will incur additional medical expenses in the future.

**42.** As a direct and proximate result of Aerostar and PJS' negligence, Plaintiff underwent surgery to reconstruct her left knee patella, will undergo additional surgeries, and has and will continue to take post-surgery physical therapies for several months.

**43.** As a direct and proximate result of Aerostar and PJS' negligence, was, is and will be precluded from engaging in normal activities and pursuits, including a loss of ability to earn money and of actual earnings.

**44.** As a direct and proximate result of Aerostar and PJS' negligence, was, is and will be precluded obtaining and enjoying employment and compensations benefits offered by her employer as part of her employment package.

### Count I: Negligence

**45.** All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

**46.** Aerostar has a non-delegable duty to maintain the LMM premises is a safe condition.

**47.** Upon information and belief, the wet floor was a known by defendants to be caused by a periodic leak from and air conditioning unit.

**48.** The floor on the premises where Plaintiff fell posed a serious hazard to her and other patrons in that it was wet and slippery and had been wet and slippery for some time.

**49.** The premises had been wet and slippery in the recent past, which resulted in other patrons slipping and falling, thus putting defendants on notice of a continuing risk of injury.

**50.** Aerostar and PJS have a duty to protect patrons against the risk of dangerous conditions existing on the LMM.

**51.** At all relevant times herein, Aerostar and PJS knew of, or by exercise of reasonable care should have discovered the dangerous condition that caused Plaintiff's injuries.

**52.** Plaintiff had no pre-existing conditions which could have been aggravated by the accident described herein.

**53.** As a direct and proximate result of said negligence of Aerostar and PJS, the plaintiff was injured in her health, strength, and activity, sustaining injury to her right leg, all of which said injuries have caused and continue to cause the plaintiff great mental, physical, and nervous pain and suffering.

**54.** Plaintiff is informed and believes, and thereon alleges, that said injuries will result in permanent pain and disability to her.

### Count II: Joint and/or Vicarious Liability of Aerostar

**55.** All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

**56.** At all relevant times herein, Aerostar and PJS knew of, or by exercise of reasonable care should have discovered, the dangerous condition that caused Plaintiff's injuries and failed to address the foreseeable risks described herein.

**57.** Aerostar is jointly and/or vicariously liable for the negligent harm caused by the PJS in the performance of the work as Plaintiff's harm was a risk foreseeable by Aerostar.

**58.** Cleaning and maintaining premises of high transit, such as an airport, is in itself inherently dangerous and poses a special and peculiar risk (continuous wet floors in high transit areas) such that Aerostar should have known that particularized precautions are required to safeguard patrons from its contractors.

**59.** At all relevant times, Aerostar failed to demand PJS to take special safety measures that are necessary to avoid slip-and-falls of patrons on wet surfaces and failed to exercise due diligence to take such measures itself.

60. At all relevant times, Aerostar failed to adequately monitor PJS' performance pursuant to the terms and conditions of their contract.

61. PJS' lack of care was foreseeable to Aerostar.

62. Aerostar failed to exercise due diligence in ensuring that PJS had sufficient skill and experience to carry out the airport's cleaning and maintenance work.

63. Aerostar failed to inform PJS about the water leaking into the premises where Plaintiff suffered her injuries.

64. PJS' negligence as is fairly and directly attributable to the contracted-for work. PJS' negligence arouse out of the cleaning and maintenance work itself and Aerostar failed to take particular precautions to eliminate the risk that directly and proximately caused Plaintiff's injuries.

65. Upon information and belief, the cleaning and maintenance of the LMM and the area where the accident took place were performed according to Aerostar's insufficient and deficient plans and instructions.

66. At all relevant times, Aerostar knew the precise nature of the work performed by PJS and that the premises would present dangers and risk to patrons.

67. Aerostar should have foreseen that the work done by PJS posed a potential danger to patrons in the premises where Plaintiff suffered her injuries.

**68.** Aerostar is therefore jointly and/or vicariously liable for the negligent acts of PJS.

### Count III: Medical Expenses

**69.** All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

**70.** As a further direct and proximate result of the negligence of Aerostar and PJS as herein alleged, the Plaintiff has and will pay and incur reasonable and necessary expenses for ambulance, surgeries, medicines, doctors' bills, nursing, hospitalization, therapy, medical supplies and equipment, and medical care.

**71.** Plaintiff is entitled to compensation for reasonable and necessary expenses for ambulance, medicines, doctors' bills, nursing, surgeries, hospitalization, therapy, medical supplies and equipment, and medical care, paid by third parties under the collateral source rule.

**72.** Plaintiff is informed and believes, and therefore alleges, it will be necessary for her to have additional medicines, nursing, hospitalization, medical and surgical care, and treatment in the future, the exact nature and cost of which is unknown and cannot at this time be ascertained, and the Plaintiff requests leave to amend this pleading and state the cost and value thereof when same shall have been determined.

### Count IV: Loss of Income and Earning Capacity

**73.** All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

**74.** As a further direct and proximate result of the negligence of defendants and the injuries suffered and sustained by Plaintiff, Plaintiff has suffered a loss of income and earnings, and her earning ability is, and will remain, impaired and diminished by reason thereof, and she will continue to suffer a further loss of earnings and income for an indefinite period of time, and plaintiff prays leave to amend this complaint and insert the true amounts when the same shall be ascertained.

## COUNT V: Direct Action

**75.** All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

**76.** Under Puerto Rico's Direct-Action Statute, the insurer issuing a policy insuring any person against loss or damage through legal liability for bodily injury and damages to a third party, shall become liable whenever a loss covered by the policy occurs. 26 P.R. Laws Ann. § 2001.

**77.** Mapfre and Insurance Companies ABC are liable for the damages herein demanded pursuant to the insurance policies issued for the benefit of the Aerostar and PJS.

## Jury Trial Demanded

Plaintiff demands a trial by jury on all counts.

**WHEREFORE,** Plaintiff demands that judgment in the amount of $1,000,000.00 be entered against defendants for all damages claimed herein, plus interest, costs, attorneys' fees and any other remedy to which she may be entitled under law or equity.

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, this 22nd day of September 2022.

<u>s/ Alberto J. Castañer-Padró</u>
Alberto J. Castañer-Padró
USDC 225706
**Castañer & Cía PSC**
MAI Center
Marginal Kennedy
771 Calle 1, Ste 204
San Juan PR 00920
Fax 1 888 227 5728
Tel 787 707 0802
<u>alberto@castanerlaw.com</u>